**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**AMIE E. P.,**

**Plaintiff,**

**v.**

**Civil Action 2:26-cv-153**
**Judge Algenon L. Marbley**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Amie E. P. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a supplemental security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff protectively filed an SSI application and alleged that she became disabled beginning September 29, 2023. (R. at 78, 235–43.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on May 15, 2025, at which Plaintiff, who was represented by counsel, appeared and

testified. (*Id*. at 93–128.) A vocational expert ("VE") also appeared and testified. On June 5, 2025, the ALJ issued an unfavorable determination, which became final on December 12, 2025, 2026, when the Appeals Council declined review. (R. at 75–92, 1–7.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred when evaluating prior administrative findings from state agency reviewing psychologists. (Pl.'s Statement of Errors 6–13, ECF No. 11.) The undersigned concludes that this contention of error lacks merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on June 5, 2025. (R. at 75–92.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her September 29, 2023 application date. (*Id*. at 80.) At step

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

two, the ALJ found that Plaintiff had the following severe medically determinable impairments: generalized anxiety disorder; depressive disorder; and post-traumatic stress disorder (PTSD). (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 81.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except the claimant cannot climb ladders, ropes, or scaffolds, but can frequently climb ramps or stairs. She can frequently stoop, crouch, kneel, and crawl. She should also avoid work at unprotected heights and avoid work in proximity to moving mechanical parts. The claimant must also avoid concentrated exposure to vibration. Mentally, the claimant can perform simple, routine tasks, with only occasional interaction with the public, coworkers, and supervisors. She cannot perform strict production, hourly requirements; and end of day work goals. She is also unable to perform tandem, routine job tasks with coworkers.

(*Id.* at 82.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 86.) The ALJ then relied on the VE's testimony at step five to determine that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of packager, cleaner, and order picker. (*Id.* at 86.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id.* at 87.)

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error when evaluating prior administrative findings from state agency reviewers. (Pl.'s Statement of Errors 7–13, ECF No. 8.) The undersigned is not persuaded.

### A. The Evaluation of Medical and Other Types of Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical

---

[3] Because Plaintiff's application was filed in 2023, it is subject to regulations governing applications filed after March 27, 2017.

opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. The Prior Administrative Findings**

On May 21, 2024, Kari Kennedy, Psy.D. reviewed Plaintiff's file at the initial level. (R. at 135, 139.) Dr. Kennedy found, in relevant part, that Plaintiff had moderate limitations in her ability to interact with others. (*Id*. at 135, 138.) She further found that because of those limits, Plaintiff was "[c]apable of brief, superficial interactions with others." (*Id*. at 138.)

At the reconsideration level, Deryck Richardson, Ph.D., reviewed Plaintiff's file on July 21, 2024. (*Id*. at 144.) He agreed with Dr. Kennedy's social-interaction limits. (*Id*. at 148.)

**C. The ALJ's Analysis**

Here, the ALJ separately determined that findings from a different doctor, consultative examiner Dr. Dubey, were persuasive. (*Id*. at 85.) The ALJ also evaluated the reviewers' findings and determined that they were *generally* consistent with Dr. Dubey's persuasive findings[4] and *generally* consistent and supported by the overall record. (*Id*.) When addressing supportability and consistency of the reviewers' findings, the ALJ wrote as follows:

> The mental findings are generally consistent with the consultative psychological exam, showing no more than mild-to-moderate limitations. As noted in the "paragraph b" section, the claimant had average intelligence, no memory issues, and ongoing problems in social situations. However, she was cooperative throughout the record. (Ex. 5F, Hearing testimony). She also received generally conservative mental health treatment, even as recently as 2025, as these records primarily show medication adjustments and refills. (Ex. 10F). The undersigned worded the mental limitations slightly differently than DDS to comply with the Regulations. However, the DDS opinions are generally consistent with and supported by the overall evidence of record.

[4] Plaintiff does not challenge the ALJ's evaluation of Dr. Dubey's opinion.

(*Id*.)

As this discussion demonstrates, the ALJ acknowledged Plaintiff's ongoing difficulties in social situations, which the ALJ discussed when evaluating the paragraph B criteria elsewhere in the determination. (*Id*. at 85, 81.) But the ALJ also determined that despite these difficulties, the record reflected that Plaintiff was cooperative. (*Id*.) Substantial evidence supports that determination. Plaintiff was noted to be cooperative during examinations. (*Id*. at 512, 542, 622, 628, 634.) Other records described Plaintiff as pleasant, appropriate sounding, placid, or conversational. (*Id*. at 495, 551, 662.)

The ALJ also considered Plaintiff generally conservative treatment, which suggested that more restrictive social interaction limits were unwarranted. (*Id*. at 85.) Substantial evidence supports that determination as well. Plaintiff's mental health providers used motivational, person-centered, or cognitive behavioral therapies, and consistently documented that Plaintiff showed some or good progress with those modalities. (*Id*. 495, 498, 501, 504, 507, 554, 557, 560, 563, 566, 569, 572, 575, 578, 581, 584, 595, 598, 601, 605.) As the ALJ further observed, Plaintiff's treatment also generally involved medication adjustments and refills. Substantial evidence supports that determination—the record shows that Plaintiff's treatment involved adjustments to her medications which were renewed until she became pregnant in 2024, at which time some of her medications were discontinued. (*Id*. at 511, 516–17, 627, 632, 867.)

Importantly, the ALJ also did not adopt the reviewers' social interaction limits verbatim. She expressly stated that she "worded the mental limitations differently" to better comport with the applicable regulations. (*Id*. at 85.) Specifically, although the reviewers found that Plaintiff was capable of "brief, superficial interactions with others," the ALJ instead limited Plaintiff to

only "occasional interactions with the public, coworkers, and supervisors" and no "tandem, routine job tasks with coworkers." (*Id*. at 138, 148, 82.)

Plaintiff contends that this departure was erroneous. In her view, because the ALJ endorsed the reviewers' findings, the ALJ was required either to incorporate their limit to "brief superficial interactions" into her RFC or explain why that limit was omitted. (Pl.'s Statement of Errors 7–8, ECF No. 11.) Plaintiff further contends that the ALJ's limit to "no tandem . . . tasks with coworkers" does not account for the reviewers' superficial-interaction limit. (*Id*. at 9.) She urges that even if the limit to no tandem-tasks with coworkers addressed the quality of her workplace interactions, it only applied to her interactions with coworkers, while the reviewers superficial-interaction limit applied to Plaintiff's interactions with others more broadly. (*Id*.) Stated differently, Plaintiff contends that the ALJ's no tandem-task limit was too narrow.

Plaintiff's contention, however, rests on the premise that the ALJ fully adopted the reviewers' findings. She did not. The ALJ found Dr. Dubey's opinion persuasive. (R. at 85.) In contrast, the ALJ determined only that the reviewers' findings were *generally* consistent with Dr. Dubey's persuasive opinion and *generally* supported by and consistent with the other evidence of record. (*Id*.) When discussing the reviewers' findings, the ALJ also referred to evidence that Plaintiff was cooperative during examinations and that she pursued only conservative treatment. (*Id*.) These were the record-based reasons why the ALJ determined that the reviewers' findings were only generally persuasive. Moreover, the ALJ also stated that she formulated Plaintiff's limitations differently from the reviewers to make them more in line with the regulations. (*Id*.) Thus, the ALJ did not wholly endorse the reviewers' findings or represent that she intended to adopt them in total. That distinction matters. *Cf. Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 18, 2019) (remanding where the ALJ found

state-agency medical findings persuasive but failed to incorporate an opined limit into an RFC or explain its omission).

Consequently, Plaintiff's contention of error lacks merit. The ALJ considered the reviewers' findings alongside Dr. Dubey's opinion; found Dr. Dubey's opinion persuasive; determined that the reviewers' findings were only generally consistent with that opinion; and that the reviewers' findings were only generally consistent with record evidence, including evidence of her cooperative behavior and conservative mental health treatment. (R. at 85.) The ALJ then expressly formulated mental limitations that differed from the reviewers' proposed limitations. (*Id*.) Plaintiff has not demonstrated that this constituted reversible error.

## V. RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE